RECORD NUMBER: 13-7881

# United States Court of Appeals
*for the*
# Fourth Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

MICHAEL MONROE GROOMS,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT COLUMBIA

# OPENING BRIEF OF APPELLANT

JONATHAN M. MILLING
MILLING LAW FIRM, LLC
1614 Taylor Street
Suite C
Columbia, SC 29201
(803) 451-7700

*Counsel for Appellant*

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................. ii

Statement of Subject Matter and Appellate Jurisdiction ......................... 1

Issue Presented for Review ....................................................................... 1

Statement of the Case and Statement of Facts ......................................... 2

Argument.................................................................................................... 9

        Summary of the Arguments................................................................. 9

        Standard of Review.............................................................................. 9

        Discussion............................................................................................ 9

        I.     The District Court Abused Its Discretion In Denying
                 Grooms' Petition For An Error Writ Of Coram Nobis ...................... 9

                a.  The District Court erred in concluding that Grooms did
                      not demonstrate a fundamental error ........................................... 11

                    1.  Prior counsel was ineffective in failing to see Grooms
                        realize the benefit of his bargain.............................................. 16

                    2.  Counsel provided incorrect advice regarding the
                        preservation of Grooms' appellate issue................................. 19

Conclusion ............................................................................................... 20

Statement Regarding Oral Argument ...................................................... 21

Certificate of Compliance

Certificate of Service

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bereano v. United States*,
    706 F.3d 568 (4th Cir. 2013) ........................................................... 9

*Cuyler v. Sullivan*,
    446 U.S. 335 (1980)......................................................................... 18

*Hill v. Lockhart*,
    474 U.S. 52 (1985)........................................................................... 12

*Hirabayashi v. United States*,
    828 F.2d 591 (9th Cir. 1987) ........................................................ 10

*Jones v. Barnes*,
    463 U.S. 745 (1983)......................................................................... 13

*Lafler v. Cooper*,
    132 S.Ct. 1376 (2012)................................................................. 17, 20

*McMann v. Richardson*,
    397 U.S. 759 (1970)......................................................................... 16

*Missouri v. Frye*,
    132 S.Ct. 1399 (2012)...................................................................... 17

*North Carolina v. Alford*,
    400 U.S. 25 (1970)........................................................................... 18

*Padilla v. Kentucky*,
    559 U.S. 356 (2010)......................................................................... 16

*Roe v. Flores-Ortega*,
    528 U.S. 470 (2000)......................................................................... 13

*Strickland v. Washington*,
    466 U.S. 668 (1984)............................................................... *passim*

*U.S. v. Cronic*,
     46 U.S. 648 (1984)...................................................................................... 17

*United States v. Addonizio*,
     442 U.S. 178 (1979)............................................................ 10, 11, 12, 20

*United States v. Akinsade*,
     686 F.3d 248 (4th Cir. 2012) .................................................... 7, 9

*United States v. Denado*,
     556 U.S. 904 (2009)............................................................ 10, 11

*United States v. Embree*,
     169 Fed.Appx. 761 (4th Cir. 2006) ........................................... 13

*United States v. Gibert*,
     677 F.3d 613 (4th Cir. 2012)("*Grooms I*").......................... 5, 19, 20

*United States v. Lawson*,
     677 F.3d 629 (4th Cir. 2012) .................................................. 4, 20

*United States v. LeCraft*,
     No. 13-4041, 2013 WL 5754379 (4th Cir. Oct. 24, 2013).......... 13, 14, 15, 20

*United States v. Morgan*,
     346 U.S. 502 (1954)............................................................ 11

*United States v. Orocio*,
     645 F.3d 630 (3[d] Cir. 2011)( ............................................... 11

## Rules, Statutes and Other Authorities

7 U.S.C. § 2156 ............................................................................................ 4

7 U.S.C. § 2156(a)(1) ................................................................................. 2

18 U.S.C. § 2 ............................................................................................... 2

18 U.S.C. § 371 .......................................................................................... 2

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1651(a) ........................................................................... 9

Fed. R. Crim. P. 11(a)(2) .......................................................... 1, 13, 19

United States Constitution, Sixth Amendment ............................... 11, 18

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from the denial of a petition for a writ of error coram nobis. Appellant Michael Monroe Grooms ("Grooms") entered a conditional guilty plea pursuant to Rule 11(a)(2) to conspiring to violate the Animal Welfare Act ("AWA") and one substantive count of violating the AWA, following unfavorable rulings by the District Court. Grooms appealed and this Court affirmed his convictions. Grooms timely, but unsuccessfully, petitioned for certiorari. As Grooms was no longer in custody, he filed a petition for a writ of error coram nobis on August 12, 2013. The District Court denied Grooms' petition on October 24, 2013. The Notice of Appeal was timely filed on November 22, 2013.

Jurisdiction in the Court of Appeals is authorized pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

I.    WHETHER THE DISTRICT COURT ERRED IN REFUSING GROOMS' PETITION FOR A WRIT OF ERROR CORAM NOBIS?

1

## STATEMENT OF THE CASE AND
## STATEMENT OF FACTS[1]

Grooms was indicted in November 2009 and charged as one of eleven defendants in a federal indictment alleging conspiracy to violate the Animal Welfare Act ("AWA"), in violation of 18 United States Code Section 371 (Count 1), and one count of participating in, and/or aiding and abetting, an unlawful animal fighting venture in violation of 7 United States Code Section 2156(a)(1) and 18 United States Code Section 2 (Count 3) (JA, p. 18-25).  Grooms entered a Not Guilty plea on November 9, 2009.

After several continuances, Grooms' trial was scheduled for the April 29, 2010 term of Court.  In advance of trial, several pretrial motions were filed. Notably, the defendants challenged the Constitutionality of the AWA on Interstate Commerce grounds, and also filed a motion seeking clarification from the District Court as to whether, at trial, the Government would be required to show a *de minimus* impact upon interstate commerce, or whether a showing of substantial impact was required. (JA, p. 26-27)  In this filing, Grooms' counsel outlined that, depending upon the District Court's interpretation of the standard, such determination could be dispositive of the intentions of several defendants as to whether to proceed to trial.

---

[1] For purposes of this Brief, the facts are not in dispute, and are intertwined with the procedural juxtaposition of the case.  As such, and in the interest of brevity, the Statement of the Case and the Statement of Facts sections are combined.

2

In response to the aforementioned request regarding the standard of proof, the District Court provided a draft of a jury charge relevant to the elements of the AWA, including the interstate nexus requirement. (JA, p. 28-31)  Therein, the District Court outlined that the following charge would be given

> A venture is "in" interstate or foreign commerce when it is itself directly engaged in the production, distribution, or acquisition of services, money, goods, or other property in interstate or foreign commerce.  A venture is "affecting" interstate or foreign commerce if the venture in any way, no matter how minimal or slight, interfered with, changed, or altered the movement or transportation or flow of goods, merchandise, money, or other property between or among two or more states or between a state and a foreign country.  It does not matter whether the effect is harmful or beneficial, it only matters that there is an effect on interstate or foreign commerce.

(JA, p. 29)

Thus, the District Court advised the parties of an intention to charge the lesser *de minimus* standard, contrary to the urging of the defendants.

On April 28, 2010, a final pretrial conference was held prior to jury selection.  During that hearing, counsel for Grooms advised the District Court that Grooms elected to enter a Conditional Guilty Plea pursuant to Rule 11(a)(2), with the consent of the United States, reserving his right to challenge several issues, including the aforementioned *de minimus* jury charge.  A written memorialization of the issues to be preserved was thereafter filed on April 29, 2010. (JA, p. 164-

3

168) Therein, Grooms expressly preserved his right to challenge the following issues:

- 7 USC § 2156 Exceeds Congress' Authority to Regulate Interstate Commerce and is Unconstitutional;

- 7 USC § 2156 Requires the Government to Prove that Defendant Knew that the Animal Fighting Venture Affected Interstate Commerce; and

- The Government is Required to Prove that the Activity *Substantially* Affected Interstate Commerce.

But for Grooms' ability to preserve his rights to challenge these issues, he would not have entered his plea. (JA, pp. 32, 184-186)  The timing of Grooms' plea, in context with the District Court's jury charge disclosure, confirms Grooms' intent. The District Court accepted Grooms' Conditional Plea on April 28, 2010.  The District Court thereafter sentenced Grooms to three (3) years probation on July 29, 2010.  Grooms timely appealed his conviction pursuant to the Conditional Plea.

Grooms' appeal was consolidated with several other defendants who entered guilty pleas[2], and on March 9, 2011, the Joint Brief of Appellants was filed with

---

[2] A separate appeal was taken from the District of South Carolina in related cases, *United States v. Lawson*, 10-4831, which was consolidated with *Grooms I* following briefing, but deconsolidated following oral arguments and the opinions were issued separately.  *See United States v. Lawson*, 677 F.3d 629 (4th Cir. 2012).

4

the Fourth Circuit Court of Appeals. (See Addendum)[3] Therein, but two issues were raised: (1) the Constitutionality of the AWA and (2) the District Court's adverse ruling on whether the AWA requires the Government to prove the defendants knew the AWA affected interstate commerce. Conspicuously absent from the Brief is the preserved challenge to the jury charge on the interstate nexus requirement, which precipitated Grooms' conditional guilty plea.

This Court heard argument in Grooms' case on January 24, 2012, and issued the Opinion on April 20, 2012. *See United States v. Gibert*, 677 F.3d 613 (4th Cir. 2012)("*Grooms I*"). In *Grooms I*, this Court determined that the AWA is a Constitutional exercise of Congressional power under the Commerce Clause. In so concluding, this Court initially evaluates the facial challenge to the AWA, and concludes that, "[i]n light of our consideration of the four factors employed by the Supreme Court in *Lopez* and *Morrison*, we hold that the district court did not err in concluding that the animal fighting statute was a legitimate exercise of Congress' power under the Commerce Clause." *Id.* at 626-27.

*Grooms I* also construed the Briefs as having lodged an "as applied" challenge to the AWA. *See id.* at 627. In evaluating the "as applied" challenge, the Court notes that "if the cockfighting activities in which [Appellant] participated

---

[3] This Court granted Grooms' request to attach the brief in *Grooms I* on January 31, 2014.

were wholly an intrastate activity, the government would be unable to establish one of the elements of the offense, namely, that the event be 'in or affecting interstate or foreign commerce.'" *Id.* (*citing* 7 U.S.C. §2156(g)(1)) "However, by his guilty plea to the offense, [Appellant] acknowledged that the government could prove that the event 'was in or affecting interstate commerce.'" *Id.* "Therefore, any as-applied constitutional challenge to the animal fighting statute based on the manner in which the cockfighting operation was conducted necessarily fails." *Id.* Thus, using this analysis, by entering his plea, Grooms acknowledged the requisite interstate nexus. Grooms' convictions were affirmed.

On August 8, 2012, the District Court entered an Order granting Grooms early termination of his probationary sentence. (JA, p. 17, Docket Entry 773) Shortly after termination of supervision, on August 16, 2012, Grooms and others petitioned the United States Supreme Court for certiorari, seeking to have his conviction vacated. The certiorari petition was denied by the Supreme Court on October 1, 2012.

On August 12, 2013, less than a year after his conviction became final, Grooms filed the instant Petition for Writ of Error Coram Nobis, seeking to vacate his earlier conviction, and restore his civil rights. (JA, p. 173-186) Specifically, Grooms challenged counsel's failure to challenge on his initial appeal the District Court's determination as to the standard of proof required for the interstate nexus.

6

Alternatively, Grooms challenged counsel's advice regarding the availability of a conditional guilty plea on this same issue.

On September 11, 2013, the Government responded in opposition. (JA, p. 187-193)  In so doing, the Government primarily based its position on a belief that Grooms' argument on the standard of proof required was, in actuality, appealed, and therefore the requested relief was inappropriate.  (JA, p. 190-191)  Of note, the Government does not challenge Grooms' demonstration that valid reasons exist for not attacking the conviction earlier, or the adverse consequences existing from the conviction sufficient to satisfy the case or controversy requirement of Article III. *See United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012); (JA, p. 222) While the Government does assert that Grooms had the remedy of direct appeal available to him that was properly exercised (JA, pp. 206; 221), as correctly determined by the District Court, the Government's argument confuses a criminal defendant's right to a direct appeal with his right to challenge the effectiveness of counsel. (JA, p. 222) The Government did not provide any discussion with regards to the merits of Grooms' ineffective assistance of counsel claim.

Despite such lack of analysis by the Government, the District Court, after "assum[ing] for purposes of this order that Grooms satisfies the first three requirements for entry of a writ of error *coram nobis*", delved into the fourth element: fundamental error. (JA, p. 222-229)  In so doing, the District Court

7

analyzes the ability of counsel, not the client, to determine which issues to appeal, focusing on the *Strickland*[4] analysis of typical appellate cases. (JA, p. 223-226) With regards to Grooms' assertion that prior counsel was ineffective regarding the advice that he *could* preserve the *de minimus* issue for appeal, the District Court concludes that, based upon the proceedings, Grooms was aware of any potential problems that might exist with regards to the ability to raise the issue on appeal. Grooms' petition was denied.

For the reasons set forth herein, the District Court erred in concluding that Grooms was unable to establish a fundamental error, and thereby *coram nobis* relief unavailable. Grooms' conviction should be vacated as he failed to receive the benefit of his bargain in negotiating the conditional plea, and the case remanded for trial.

---

[4] *Strickland v. Washington*, 466 U.S. 668 (1984).

# ARGUMENT

## SUMMARY OF THE ARGUMENTS

**ARGUMENT I**:  The District Court erred in denying Grooms' application

for a Writ of Error Coram Nobis.

## STANDARD OF REVIEW

A District Court's decision to deny an application for a writ of error coram

nobis is reviewed for an abuse of discretion. *See United States v. Akinsade*, 686

F.3d 248, 252 (4th Cir. 2012).

## I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING GROOMS' PETITION FOR AN ERROR WRIT OF CORAM NOBIS.

Title 28, Section 1651(a) of the United States Code authorizes the federal

courts to issue "all writs necessary or appropriate in aid of their respective

jurisdictions and agreeable to the usages and principles of law."  While the writ of

error coram nobis was abolished in 1946 in the civil context, it remains a viable

and available challenge to a criminal conviction. *See Bereano v. United States*, 706

F.3d 568, 576 n.8 (4th Cir. 2013).  "At common law, the writ of coram nobis was

available only 'to correct errors of fact,' enabling a petitioner 'to avoid the rigid

strictures of judgment finality by correcting technical errors such as happened

through the fault of the clerk.'" *Bereano*, at 576 (*citing United States v. Denedo*,

9

556 U.S. 904, 910-11 (2009)).  In the modern context, however, "'coram nobis is broader than its common-law predecessor' and 'can issue to redress a fundamental error … as opposed to mere technical errors.'" *See id.* (*citing Denedo*, at 911).

"As a remedy of last resort, the writ of error coram nobis is granted only where an error is 'of the most fundamental character' and there exists no other available remedy." *Akinsade*, at 252 (*citing United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988)).  The writs' issuance is limited to "extraordinary cases presenting circumstances compelling its use to achieve justice." *See id.* (*citations omitted*).  "Thus, the writ provides relief in cases where the error 'rendered the proceeding itself irregular and invalid.'" *Id.* (*citing United States v. Addonizio*, 442 U.S. 178, 186 (1979)).

To be successful in seeking the issuance of a writ of error coram nobis, a petitioner must demonstrate "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *See id.* (*citing Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)).  Because

Grooms satisfies each of these stringent requirements, the District Court abused its discretion in rejecting Grooms' application for relief.[5]

### a. The District Court erred in concluding that Grooms did not demonstrate a fundamental error.

"A writ of error coram nobis is an 'extraordinary' remedy that may be used to correct 'errors of the most fundamental character' that rendered the underlying proceeding invalid when no other alternative remedy is available." *See Akinsade*, 686 F.3d at 260 (*citing United States v. Morgan*, 346 U.S. 502, 512 (1954); *United States v. Denado*, 556 U.S. 904, 917 (2009)). "Ineffective assistance of counsel constitutes the kind of fundamental defect potentially subject to attach via a writ of error coram nobis." *Id.* at 260-61 (*citing United States v. Orocio*, 645 F.3d 630, 634 n.4 (3[d] Cir. 2011)("The writ is available to persons not held in custody [to] attack a conviction for fundamental defects, such as ineffective assistance of counsel.").

"To establish a Sixth Amendment claim of ineffective assistance of counsel, the petitioner must satisfy the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing (1) that defense counsel's

---

[5] The District Court assumed for purposes of the Order that Grooms established that the first three requirements for a writ of error coram nobis. In so assuming, the District Court's decision only determines that Grooms was unable to establish a fundamental error. Should the Government elect to now contest Grooms' ability to satisfy these three elements, Grooms reserves the right to respond in Reply.

11

performance 'fell below an objective standard of reasonableness' measured by 'prevailing professional norms,' *id* at 688, and (2) that the 'deficient performance prejudiced [his] defense,' *id.* at 687." *Akinsade*, at 261.   In the context of a defendant who has pled guilty, the defendant must show "'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (*citing Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In the instant case, Grooms entered a conditional plea, reserving his right to appeal three (3) issues.  Stated another way, Grooms' guilty plea was conditioned upon his ability to present three claims on appeal – (1) challenge the Constitutionality of the AWA, (2) challenge the scienter requirement of the jury charge, and (3) challenge the interstate nexus jury charge.  While the first two issues were important, it was the third issue, the interstate nexus jury charge, which was essential to Grooms' determination to enter the conditional plea. (JA, p. 32) It was this third issue regarding the nexus required that was specifically noted during a pretrial conference immediately preceding Grooms' guilty plea. (JA, p. 41) Unfortunately, only the first two of these challenges were included in the appeal, and the issue specifically addressed in the hearing, and upon which Grooms based his plea, was not.

The law is clear that "[a]n attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective." *United States v. Embree*, 169 Fed.Appx. 761, 762 (4th Cir. 2006)(*citing Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). The instant case is in the same vein. By specifically reserving his right to challenge the interstate nexus jury charge, Grooms gave an even more specific directive to his counsel, a directive encompassed within his and a condition of his plea – appeal the reserved issue. While it is true as a general proposition, as the District Court points out, that appellate counsel's failure to advance a specific issue can be a strategic or tactical decision that does not demonstrate ineffectiveness, such does not end the inquiry here. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).[6] Conditional pleas are different, as this Court has recently recognized.

In *United States v. LeCraft*, No. 13-4041, 2013 WL 5754379 (4th Cir. Oct. 24, 2013), this Court evaluated the validity of a proposed conditional plea when the issue reserved for appeal pursuant to Rule 11(a)(2) was unavailable, having been waived prior to the conditional plea. Specifically, the defendant moved pretrial to suppress evidence. The matter was referred to the Magistrate Judge, and a

---

[6] *Barnes* was, itself, a split decision, with Justice Brennan writing a dissent joined by Justice Marshall. Both of which would have found that the decision of which issues to advance on appeal lies with the defendant, not counsel, and that when counsel is advised by the client to advance certain non-frivolous issues on appeal, the client is denied the effective assistance of counsel when he disregards those instruction. *See Barnes*, 463 U.S. at 764 (Brennan dissenting).

13

Memorandum and Recommendation ("M & R") returned recommending denial of the motion. LeCraft did not object to the M & R, and it was adopted by the District Court. Thereafter LeCraft entered a conditional plea seeking to challenge on appeal the denial of his suppression motion.

This Court recognized that "[u]nfortunately, LeCraft's purported reservation of the right to appeal the suppression order [wa]s illusory because by the time he entered the conditional plea agreement he had already waived the right to seek appellate review of that order by failing to file objections to the M & R." *LeCraft*, at * 1. "[W]hen a defendant enters a conditional plea based on the mistaken belief that he is preserving an issue for review that, in fact, is not reviewable by means of a conditional plea, no valid plea has been entered, and the proper course is to vacate the judgment and remand the case to the district court to allow the defendant to either plead guilty again or proceed to trial." *See LeCraft*, at *2. "LeCraft's plea is specifically premised on his, the government's, and the district court's mistaken belief concerning his appellate rights, and it cannot be treated as a knowing and voluntary unconditional plea." *Id.* LeCraft's plea was vacated, and the matter remanded.

The District Court in the instant matter focuses its inquiry on *Strickland*, and Grooms' ability (or inability as the District Court found) to demonstrate "counsel's representations fell below an objective standard of reasonableness," measured by

14

the "prevailing norms, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (JA, p. 203)*(citing Strickland, at 688, 694).* The analysis in this instance is not so simple, however, because Grooms' jury trial waiver was premised upon the right to appeal the reserved issues.

Focus is placed upon whether appellate counsel "made a tactical decision to give the *De Minimus* Argument no more than passing mention, allowing them to focus on what they viewed as the stronger two arguments." (JA, p. 224)  This position, however, disregards the fact that Grooms' guilty plea was expressly conditioned upon his reservation of his right to appeal the *de minimus* issue.  This reservation of rights was accepted by his attorney, the Government and the Court, and confirmed in writing. (JA, pp. 33-163; 164-168)  The question, therefore, is not whether counsel made a strategic decision, but rather, is whether counsel precluded Grooms from receiving the benefit of his bargain in the plea.  Without receiving this benefit, Grooms' plea was neither knowing nor voluntary.

As this Court recognized in *LeCraft*, Grooms' conditional plea was specifically premised upon the belief that the *de minimus* issue would be advanced. His plea cannot be treated as a knowing and voluntary unconditional plea on this

issue.  Grooms' counsel[7] was deficient in two regards as it relates to his conditional plea.

### 1. Prior counsel was ineffective in failing to see Grooms realize the benefit of his bargain.

Counsel was deficient in failing to assist Grooms in perfecting his appeal on the *de minimus* challenge.  It is clear that an accused has the right to the effective assistance of counsel in making a decision to plead guilty, or go to trial. *See Padilla v. Kentucky*, 559 U.S. 356, 364 (2010)(*citing McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Strickland*, at 686). "From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *See Strickland*, at 688 (*citing Powell v. Alabama*, 287 U.S. 45, 68-69 (1932)).  Certainly, the consultation with a defendant about the Government's willingness to acquiesce to a conditional guilty plea would fall within this mandate.

"An accused's right to be represented by counsel is a fundamental component of our criminal justice system.  Lawyers in criminal cases 'are necessities, not luxuries.'  Their presence is essential because they are the means

---

[7] Grooms had the same counsel in his initial appearance before the District Court, and his initial appearance before this Court.

through which the other rights of the person on trial are secured.  Without counsel, the right to a trial itself would be 'of little avail,' as the Court has recognized repeatedly.  'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.'" *See U.S. v. Cronic*, 46 U.S. 648, 653-54 (1984).

While these cases discuss the importance of counsel in protecting trial rights, "[t]he reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.  Because ours 'is for the most part a system of pleas, not a system of trial.'" *See Missouri v. Frye*, 132 S.Ct. 1399, 1407 (2012) (*citing Lafler v. Cooper*, 132 S.Ct. 1376, 1388 (2012)[8]).

When counsel, assisting a defendant, presents a plea offer, it is incumbent upon counsel to properly discuss the terms so as to ensure that if the defendant accepts the terms, he does so knowingly.  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.'"

---

[8] In *Lafler*, the parties conceded that counsel's provision of inaccurate legal advice that resulted in the defendant rejecting a plea offer, was deficient. *See Lafler*, at 1384.

*North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  Counsel is deficient if he fails to aid a client in the realization of those negotiated terms.

If, in a civil context, an attorney negotiated a settlement for the sum of $150,000.00 on behalf of a client, received the approval of all parties, executed the appropriate paperwork, but only delivered $100,000.00 to the client, would counsel be seen as deficient or ineffective?  Would the client be prejudiced?  Would the client have received the benefit of his bargain?  Why should a criminal defendant, with the protections of the Sixth Amendment, be treated any differently if his counsel negotiates a resolution with the Government, gains the client's consent, and the Court's approval, but only delivers on 2/3 of the benefits the client was to receive?  Counsel's decision to forego the third issue on appeal reveals an election to disregard the unequivocal interests of the client who conditioned his plea upon the appellate issue.  In so doing, counsel deprived Grooms of the benefit of his bargain, breached counsel's duty of loyalty, and placed competing interests above those of the client. *See e.g. Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).[9]  The "fair trial" premise of the Sixth Amendment has evaporated under these circumstances.

---

[9] In *Strickland*, the Court noted that "[i]n *Cuyler v. Sullivan*, 446 U.S. at 345-350, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest.  In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *See Strickland*, 466 U.S. at 692.

18

Ordinarily, a defendant waives a pretrial challenge to a jury charge once he or she enters a guilty plea. However, by complying with Rule 11(a)(2) of the Federal Rules of Criminal Procedure, with the consent of all involved, Grooms specifically reserved his right to raise this challenge in an appeal. The failure to complete the client's wishes, as outlined in the reservation of rights, by not raising the issue in an appeal is no less offensive than the failure of counsel to file an appeal when directed by the client. In fact, because Grooms' guilty plea was specifically conditioned upon such reservation of rights, this failure is more egregious, and a fundamental error in his guilty plea. Grooms' conviction should be vacated, and the case remanded for trial.

### 2. Counsel provided incorrect advice regarding the preservation of Grooms' appellate issue.

Despite the foregoing failure by counsel, *Grooms I* presents yet another problem with counsel's performance. Indeed, in evaluating the "as applied" challenge to the Constitutionality of the AWA, this Court outlines that "by his guilty plea to the offense, [Appellant] acknowledged that the government could prove that the event 'was in or affecting interstate commerce.'" *Gibert*, 677 F.3d at 627. Thus, by entering his plea, using the foregoing rationale, Grooms' plea may

have rendered the reserved issue moot.[10]    Counsel knew that Grooms' only intention was to challenge the requisite interstate nexus, and counseled Grooms that he could do so by entering the conditional plea.  If, as the *Grooms I* language suggests, Grooms waived his ability to challenge the *de minimus* standard based upon his conduct in pleading guilty, Grooms was deprived of the benefit of his bargain. *See LeCraft*, at *2.    Grooms' counsel's conduct, and erroneous representations, precipitated the plea, rendering counsel ineffective. *See e.g. Lafler v. Cooper*, 132 S.Ct. 1376, 1388 (2012).  Grooms was prejudiced as he would not have entered a guilty plea without his ability to challenge this issue on appeal. Therefore Grooms' plea should be vacated, and his trial rights restored.   The District Court erred in concluding otherwise.

## **CONCLUSION**

As with *Akinsade*, Grooms finds himself without alternate legal remedy for a wrong he has suffered.  Without the ability and challenge to the interstate nexus jury charge, Grooms would not have pled guilty.   The District Court erred in refusing to grant a writ of error coram nobis.  For the foregoing reasons, Grooms' conviction should be vacated, and the matter remanded for trial.

---

[10] Grooms' colleagues who proceeded to trial did challenge the propriety of the interstate nexus jury charge, but the Court deemed a decision on this point unnecessary in light of the remand resulting from juror misconduct. *See United States v. Lawson*, 677 F.3d 629, 651 n29 (4th Cir 2012).

20

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Counsel for the Appellant would respectfully request oral argument in person in this matter.

Respectfully submitted,

s/ Jonathan M. Milling
Jonathan M. Milling
MILLING LAW FIRM, LLC
1614 Taylor Street, Suite C
Columbia, South Carolina 29201
(803) 451-7700 (telephone)
(804) 451-7701 (facsimile)
jmm@millinglaw.net

Columbia, South Carolina
February 3, 2014

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 13-7881          **Caption:** US v. Michael Grooms

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓] this brief contains _____4,626_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓] this brief has been prepared in a proportionally spaced typeface using
MS Word 2010 _____ [*identify word processing program*] in
Times New Roman, 14 point _____ [*identify font size and type style*]; **or**

[ ] this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Jonathan Milling _____

Attorney for appellant _____

Dated: 2/3/14 _____

# CERTIFICATE OF SERVICE

I certify that on  February 3, 2014  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

NATHAN S. WILLIAMS
OFFICE OF THE U.S. ATTORNEY
151 Meeting Street
Suite 200
Charleston, SC 29402
(843) 727-4381
nathan.williams@usdoj.gov

Jonathan M. Milling                                     2/3/2014
_____              _____
            Signature                                              Date

# ADDENDUM

**RECORD NOS. 10-4848(L); 10-4851; 10-4852; 10-4875; 10-4904**

In The

# United States Court Of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

## JEFFREY BRIAN GIBERT; GERALD BENFIELD; JOHN CARLTON THURMAN HOOVER; MICHAEL MONROE GROOMS; GENE AUDRY JEFFCOAT,

*Defendants - Appellants.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA AT COLUMBIA

————————

### BRIEF OF APPELLANTS

————————

Steven M. Hisker
ATTORNEY AT LAW
126 East Main Street
Duncan, SC  29334
(803) 348-4541

*Counsel for Defendant - Gibert*

Lori S. Murray
LAW OFFICE OF LORI S. MURRAY
P.O. Box 2332
Columbia, SC  29202
(803) 779-4472

*Counsel for Defendant - Benfield*

T. Micah Leddy
THE LEDDY LAW FIRM, LLC
2008 Lincoln Street
Columbia, SC  29201
(803) 779-9966

*Counsel for Defendant - Hoover*

Joseph M. McCulloch, Jr.
LAW OFFICE OF
  JOSEPH M. MCCULLOCH, JR.
1426 Richland Street
Columbia, SC  29201
(803) 779-0005

*Counsel for Defendant - Grooms*

Debra Y. Chapman
ATTORNEY AT LAW
2007 Lincoln Street
Columbia, SC  29201
(803) 254-9007

*Counsel for Defendant - Jeffcoat*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

\*\*\*

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This appeal arises from the criminal prosecutions of Appellants Jeffrey Brian Gibert, Gerald Benfield, John Carlton Thurman Hoover, Michael Monroe Grooms and Gene Audrey Jeffcoat (collectively Appellants) in the District Court of South Carolina. Appellants were indicted for Conspiracy to Violate the Animal Welfare Act and engaging in an Unlawful Animal Fighting Venture.

Appellants, with the exception of Appellant Jeffcoat, entered Rule 11(a)(2) conditional guilty pleas to Conspiracy to Violate the Animal Welfare Act. Appellants were sentenced in July 2010. This appeal is from the final order of the District Court, which Appellants timely appealed in August 2010.

Jurisdiction of the Court of Appeals is based on 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

### I.

**DID THE DISTRICT COURT ERR IN REJECTING APPELLANTS' ARGUMENT THAT § 2156(a) OF THE ANIMAL WELFARE ACT EXCEEDS CONGRESS' AUTHORITY TO REGULATE INTERSTATE COMMERCE?**

### II.

**DID THE DISTRICT COURT ERR AS A MATTER OF LAW IN CONSTRUING THE GOVERNING STATUTE'S SCIENTER REQUIREMENT?**

## STATEMENT OF THE CASE

Appellants were named in a three-count Indictment filed in the United States District Court. Count One charged Appellants with conspiracy to violate the Animal Welfare Act. Specifically, Count One charged that Appellants conspired to knowingly sponsor and exhibit an animal in an animal fighting venture in violation of 7 U.S.C. § 2156(a)(1). Counts Two and Three charged Appellants with having knowingly sponsored and exhibited a rooster in an animal fighting venture, in violation of 7 U.S.C. § 2156(a)(1) and 18 U.S.C. § 2.

Appellants[1] moved to dismiss the indictment on the grounds that § 2156(a) of the Animal Welfare Act (AWA) exceeded the limits of the Commerce Clause.

---

[1] This case was jointly prosecuted with several other similar cases that are separately pending appeal before this Court. The District Court ruled that all motions and objections would apply to all defendants under all indictments unless

2

(J.A. Vol. I. p. 135).  The District Court issued an Order denying Appellant's Motion to Dismiss on March 31, 2010 (J.A. Vol. I. p. 244).  Additionally, Appellants moved for jury instructions requiring the Government to prove Appellants' knowledge that the charged "animal fighting venture was in or affected interstate commerce."  (J.A. Vol. I. p. 424).  Appellants also requested that the jury instructions reflect the Government's burden of proving that the "animal fighting venture[s]" targeted under the Act **substantially** affected interstate commerce. (J.A. Vol. I. p. 437).

On April 27, 2010, the District Court denied Appellants motions and issued an order stating that it would instruct the jury that the government must only prove that the activity had a *de minimis* effect on interstate commerce.  The Court also ruled that the government was not required to prove that Appellants knew that the charged animal fighting ventures were "in or affecting" interstate commerce.  (J.A. Vol. I. p. 455).

Based upon the rulings of the District Court, Appellants[2] entered Rule 11(a)(2) conditional guilty pleas on April 28 and 29, 2010 (J.A. Vol. II. pp. 588-599, 628).  Specifically, Mr. Grooms pled guilty to Count one and Count Three. (J.A. Vol. II. pp 555).  Mr. Gibert pled guilty to Count One. (J.A. Vol. II. pp 555). Mr. Hoover pled guilty to Count One, Two, and Three.  (J.A. Vol. II. pp 555).  Mr.

---

a particular defendant moved to "opt out."  (J.A. Vol. I. p. 319).

[2]  Appellant Gene Audrey Jeffcoat did not enter a conditional guilty plea.

Benfield pled guilty to Counts One and Three. (J.A. Vol. II. pp 600). Appellants were sentenced to terms of probation and the judgments were entered on July 29, 2010. (J.A. Vol. II. p. 656-668).

Defendant Gene Audry Jeffcoat was indicted on December 1, 2009, and charged in counts one through five of the indictment. Defendant entered a standard plea agreement with the government and pled guilty to counts one, two and four on April 16, 2009. Jeffcoat was sentenced on August 11, 2010.

This appeal is from the final order of the District Court. Appellants filed a timely notice of appeal. (J.A. Vol. II. p. 672, 681). This brief follows.

4

## **STATEMENT OF FACTS**

This case was investigated by the South Carolina Department of Natural Resources (DNR).  An undercover DNR agent filmed and audio recorded cockfighting derbies in Lexington County, South Carolina on July 12, 2008 and April 18, 2010.  Appellants and others were identified as individuals participating in the derbies and were thus indicted (J.A. Vol. II. p. 619).

Appellants[3] moved to dismiss the indictment on the grounds that the relevant portions of the Animal Welfare Act exceeded the limits of the Commerce Clause. (J.A. Vol. I. p. 135).  The District Court issued an Order denying Appellant's Motion to Dismiss on March 31, 2010.  (J.A. Vol. I. p. 244).

On April 19, 2010, the District Court ordered the parties to submit proposed jury charges as to the elements of all charged offenses (J.A. Vol. I. p. 418). Specifically, the Court requested the parties to submit briefs on the issue of the Government's burden of proof as it relates to the requisite intent as to the defined term "animal fighting venture."  On April 22, 2010, Appellants briefed the issues raised by the District Court and moved for jury instructions requiring the government to prove Appellants' knowledge of each element contained in the

---

[3]  This case was jointly prosecuted with two other similar indictments that are separately pending appeal before this Court, now in case 10-4831, *U.S. v. Collins.* The District Court ruled that all motions and objections would apply to all defendants in all indictments unless a particular defendant moved to "opt out" (J.A. Vol. I. p. 319).

definition of "animal fighting venture." Specifically, Appellants requested the District Court to require the government to prove that Appellants had knowledge that the venture was in or affected interstate commerce. (J.A. Vol. I. p. 424). Appellants also requested jury instructions requiring the government to prove that the "animal fighting venture" **substantially** affected interstate commerce. (J.A. Vol. I. p. 437).

On April 27, 2010, the District Court denied Appellants motion and ordered that the government must only prove that the activity had a *de minimis* effect on interstate commerce. The Court also ruled that the government was not required to prove that Appellants knew that the animal fighting venture was in or affecting commerce. (J.A. Vol. I. p. 455).

Appellants[4] entered Rule 11(a)(2) conditional guilty pleas to Conspiracy to Violate the Animal Welfare Act on April 28 and 29, 2010 (J.A. Vol. II. pp. 588-599, 628). Appellants also filed a Rule 11(a)(2) Plea Addendum which set forth the issues that Appellants would appeal. (J.A. Vol. II. pp. 629, 634, 639, 644).

Appellants' Plea Addendum raised the following issues: 1) that 7 U.S.C. § 2156(a), exceeds Congress' authority under the Commerce Clause of the United States Constitution; 2) that 7 U.S.C. § 2156(a) requires the government to prove that Appellants knew that the animal fighting venture affected interstate

---

[4] Appellant Gene Audrey Jeffcoat did not enter a conditional guilty plea.

commerce; and 3) that the government is required to prove that the activity had a substantial effect on interstate commerce. During the change of plea hearing, the District Court further clarified that the Court's Order (J.A. Vol. II. p. 439) providing the jury instruction that the Court intended to use at trial "was a ruling and it could be - it can be considered a decision on a motion for a pretrial determination of what the elements would be charged at trial." (J.A. Vol. II. pp. 560).

## SUMMARY OF ARGUMENT

Appellants entered conditional guilty pleas to federal felony charges for intrastate conduct—engaging or conspiring to engage in the knowing sponsorship or exhibition of an animal (a gamecock) in an animal fighting venture (a cockfight), *see* 7 U.S.C. § 2156(a); 18 U.S.C. § 49, a crime which the State of South Carolina considers, at most, a misdemeanor, *see* S.C. Code Ann. § 16-17-650.

## I.    Commerce Clause Challenge

Federal courts have policed the limits of Congress's Commerce Clause authority since 1824.  *See Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1 (1824).  As technology and markets have evolved, the exercise of the commerce power has undeniably changed.  *See, e.g., Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005).  However, the Supreme Court has continuously emphasized the principle that there are, and must be, constraints on the scope of the power.  *Id*.; *United States v. Morrison*, 529 U.S. 598, 608 (2000).  Such constraints are the foundation of our system of constitutional federalism.  As the Supreme Court has explained, "a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front," *United States v. Lopez*, 514 U.S. 549, 552 (1995), and thereby "secure to citizens the liberties that derive from the diffusion of sovereign power," *New York v. United States*, 505 U.S. 144, 181 (1992).

Federal courts' obligation to protect this basic structural guarantee is at its apex where, as here, Congress seeks to use the commerce power enumerated in Article I, § 8 of the Constitution to regulate local criminal conduct that the State of South Carolina already polices.  *See, e.g., Morrison*, 529 U.S. at 617-18; *Jones v. United States*, 529 U.S. 848, 857-58 (2000).[5]  In such circumstances district courts

---

[5]  Article I, section 8 empowers Congress to "make all Laws which shall be

8

must be especially vigilant in scrutinizing the application of federal power, and any failure to do so must be corrected on appeal.  This is such a case.

The District Court committed reversible error by applying an incorrect legal standard in adjudicating Appellants' motion to dismiss.   In ruling that the statute passed Constitutional muster under the Commerce Clause, the Court relied on the sufficiency of a "jurisdictional hook" in the statute, requiring the animal fighting venture to be "in or affecting interstate commerce," to establish the requisite interstate commerce nexus with the targeted activity.  In doing so, the District Court conflated the legal standard governing the Government's burden of proof for an interstate commerce element in a particular case with the legal standard for determining whether a federal statute is beyond the scope of Congress's authority to legislate under the Commerce Clause.

This error alone merits reversal because it resulted in legal rulings, and ensuing guilty pleas, at odds with controlling precedent establishing that §§ 2156(a) and (j) exceed Congress's Commerce Clause authority as applied to the intrastate activities at issue here.

As the Supreme Court has explained, such statutes pass constitutional muster only where they regulate:  (1) "the channels of interstate commerce"; (2) the "instrumentalities of interstate commerce," or "persons or things in interstate

---

necessary and proper for carrying into Execution" its authority to, among other things, "regulate Commerce with foreign Nations, and among the several States."

9

commerce"; or (3) "activities that substantially affect interstate commerce." *Raich*, 545 U.S. at 16-17.  All parties agree that this prosecution proceeded under the third prong.  The only AWA section at issue here—§ 2156(a)—does not regulate channels or instrumentalities of interstate commerce.  It governs only activities (exhibition or sponsorship of an animal in an animal fighting venture) that, at least according to the Government, may occur purely intrastate for strictly non-commercial (*e.g.,* "entertainment") purposes.  *Id.*  Accordingly, the District Court's denial of Appellant's Commerce Clause challenge required a finding either that: (1) at least in the aggregate, the class of (conspiracy,[6] exhibition or sponsorship) conduct at issue in this case "substantially affects" interstate commerce; or (2) if it does not, that federal regulation of the conduct is nonetheless "essential" to effectuate a legitimate interstate regulatory scheme.  *E.g., Raich,* 545 U.S. at 24; *Lopez*, 514 U.S. at 561.  The District Court did not make either finding.  Nor could it.

The activity § 2156(a) criminalizes plainly does not involve the kind of undisputed interstate "commodity" at issue in the Supreme Court's leading "substantial effects" cases.  *Raich*, 545 U.S. at 18 (marijuana); *Wickard v. Filburn*, 317 U.S. 111, 118, 127-28 (1942) (wheat).  Nor does it target conduct that can

---

[6] The conspiracy counts in Appellants' indictments may raise additional constitutional questions to the extent the Government has not, or cannot, establish that the counts target conduct (and specifically acts in furtherance) that substantially affect interstate commerce.

10

fairly be characterized as "quintessentially economic." *E.g., Raich*, 545 U.S. at 25. The statute itself says the activity can be purely for "entertainment" value, and the record below, including the Government's Bill of Particulars, shows at most that the alleged conduct involved minor implements that moved in interstate commerce, *see* J.A. Vol. I. pp. 440-443 (rubber bands and cotton), and that individuals may have discussed the activity in interstate communications, *see id*. That is not enough to pass constitutional scrutiny, particularly where the conduct is already regulated (here, at a different level of punishment) by a State. The fact that perpetrators could use items that moved in interstate commerce to engage in the conduct at issue in *Lopez* (gun possession in school zones), *Morrison* (violence against women), or *Jones* (arson) was not enough to justify federal criminalization of the conduct under the Commerce Clause. And the interstate expressive conduct the Government cites, even if it could constitutionally support (under the Commerce Clause or First Amendment) federal criminal treatment of the non-expressive conduct at issue here, in no way establishes an interstate market in the sponsorship and exhibition activity the statute targets. Accordingly, the District Court's denial of Appellant's Commerce Clause challenge cannot be affirmed within the bounds of the Supreme Court's "substantial effects" precedents.

Nor can the District Court's Commerce Clause ruling be affirmed on the alternate ground that criminalization of the class of conduct in issue here is

necessary to effect a valid federal regulatory scheme.  To the extent the Supreme

Court has countenanced this justification for Commerce Clause regulation, its

application here is undercut by § 2156(a)'s express exceptions for fighting ventures

that occur in States that consider them legal.  *See* §§ 2156(a)(2); (d).  Because

these exceptions could place any number of otherwise covered fighting ventures

outside the statute's reach, it is not plausible to conclude that Congress viewed

federal criminalization of the ventures as "essential" to effectuate a broader federal

regulatory regime, including that reflected in § 2156's other subsections.

*Compare, e.g., Raich*, 545 U.S. at , 24 26- 27, 33 (emphasizing that federal

regulation of local production of marijuana was "essential" to effectuate the CSA's

"closed regulatory system" for interstate trafficking in that commodity because,

*inter alia*, the CSA designated marijuana as "contraband for *any* purpose,"  and

thus did not admit of the type of exceptions present in § 2156(a)).

     The fact that the District Court's Commerce Clause ruling allows federal

regulation of intrastate activity far beyond the bounds of any Supreme Court or

circuit precedent is alone grounds for reversing the judgment.

## II.    Scienter Requirement

     The District Court misapplied circuit precedent and basic canons of statutory

interpretation in construing § 2156(a)'s scienter requirement.  The District Court

concluded that, although a fighting venture's effect on interstate or foreign

12

commerce is an "element" of a § 2156(a) offense, (J.A. Vol. I. pp. 455-456) the provision's knowledge requirement does not apply to that element, and thus the Government need not prove "that the Defendant knew that the animal fighting venture was engaged in or was affecting interstate or foreign commerce." *Id.* This ruling contravenes settled interpretive canons and circuit precedent.

In *United States v. Talebnejad*, 460 F.3d 563, 572-573 (4th Cir. Md. 2006), this Court held that statutory language materially identical to the language here required the Government to prove that the defendants knew that their unlicensed activity affected interstate commerce. The statute at issue in *Talebnejad*, 18 U.S.C. § 1960, applies to whoever "knowingly conducts…an unlicensed money transmitting business." The statute treats "unlicensed money transmitting business," as a term of art which is defined as "a money transmitting business which affects interstate or foreign commerce . . . ." The Court in *Talebnejad* stated: "[t]here is no question here that the Government must prove the Talebnejads' knowledge as to all of the factual elements of the crime, including that they were conducting a money transmitting business that *affected interstate commerce*. The District Court's erroneous interpretation of the parallel scienter requirement in this case is an independent ground for reversing the final judgment accepting Appellants' conditional guilty pleas.

13

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN REJECTING APPELLANTS' ARGUMENT THAT § 2156(a) OF THE ANIMAL WELFARE ACT EXCEEDS CONGRESS' AUTHORITY TO REGULATE INTERSTATE COMMERCE AND IS THEREFORE UNCONSTITUTIONAL.**

### STANDARD OF REVIEW

This Court reviews *de novo* a challenge to the constitutionality of a federal statute as well as the District Court's legal interpretation of statutory scienter requirements. *See, e.g., United States v. Buculei*, 262 F.3d 322, 327 (4th Cir. 2001).

### DISCUSSION

A series of recent Supreme Court decisions makes clear that "even under our modern, expansive interpretation of the Commerce Clause, Congress's regulatory authority is not without effective bounds." *United States v. Morrison*, 529 U.S. 598, 608 (2000); *see also United States v. Lopez*, 514 U.S. 549, 557 (1995); *Gonzales v. Raich*, 545 U.S. 1, 23-26 (2005). As noted, Congress, acting under the Commerce Clause, may regulate only (1) "the channels of interstate commerce"; (2) the "instrumentalities of interstate commerce," or "persons or things in interstate commerce"; and (3) "activities that substantially affect interstate commerce." *Raich*, 545 U.S. at 16-17.

The statutory provisions governing Appellants' indictments provide, in relevant part:

**Animal fighting venture prohibition**

**(a)** Sponsoring or exhibiting an animal in an animal fighting venture

> **(1)** In general[.] Except as provided in paragraph (2), it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture.

> **(2)** Special rule of certain State[s.] With respect to fighting ventures involving live birds in a State where it would not be in violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in the fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture. . . .

**(g) Definitions**

> **(1)** The term "animal fighting venture" means any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment . . . .

**(j) Criminal penalties[.]** The criminal penalties for violations of subsection (a), (b), (c), or (e) are provided in section 49 of title 18.

The controlling provision here—§ 2156(a)—is notable in two respects.

*First*, it targets only sponsorship or exhibition of an animal in an animal fighting venture, and is thus distinct from subsections (b), (c) and (e), which expressly target only commodities or activities in or involving the channels or

15

instrumentalities of interstate commerce. *See* § 2156(b) ("buying, selling, delivering, possessing, training, or transporting animals for participation in animal fighting venture"); (c) ("use of Postal Service or other interstate instrumentality for promoting or furthering animal fighting venture"); (e) ("buying, selling, delivering, or transporting sharp instruments for use in animal fighting venture"). ***Second,*** subsection (a)'s prohibition on sponsorship or exhibition of animals in fighting ventures is not limited to ventures for commercial gain. *See* § 2156(a), (g)(1). Accordingly, the provision is valid under the Commerce Clause only if the activity it prohibits "substantially affects" interstate commerce or is otherwise "essential" to valid federal regulation of an interstate market. *See, e.g., Raich*, 545 U.S. at 20 (emphasizing that both *Raich* and *Wickard* involved record evidence or congressional findings "establish[ing] the causal connection between the production [of the commodity in issue] for local use and the national market"). Unlike *Raich*, there is no record evidence whatsoever that the statute targets activity that substantially affects interstate commerce or is otherwise essential to a broader federal regulation.

### A. The District Court Committed Reversible Error by relying on the "jurisdictional hook" to establish the requisite interstate commerce nexus necessary to justify Commerce Clause legislation.

The District Court's analysis of Appellants' Commerce Clause challenge to § 2156(a) treats the "inclusion of a jurisdictional element in the offense" as

16

sufficient to justify federal criminalization of local conduct, so long as there was an impact on interstate commerce, no matter how slight. (J.A. Vol. I. p. 265-66) ("Given the inclusion of a jurisdictional element in the offense (requiring an interstate or foreign commerce connection), the court previously noted that it was doubtful this challenge could succeed"). The District Court's constitutional analysis conflated two distinct inquiries. The fact that Congress included a jurisdictional hook in § 2156 is of course relevant to the statute's constitutionality, *see, e.g., Morrison*, 529 U.S. at 613, but is by no means the end of the inquiry. The jurisdictional hook is instead the beginning of the inquiry whether Congress appropriately "limit[ed] [the statute's] reach to a discrete set of [offenses]" that substantially affect interstate commerce. *Lopez*, 514 U.S. at 562; *see also Morrison*, 529 U.S. at 613.

Although *Lopez* and *Morrison* noted that the statutes they invalidated lacked a jurisdictional hook, they did not suggest that the presence of a jurisdictional hook automatically renders a statute constitutional. Rather, as the Seventh Circuit has observed: "In discussing the lack of a jurisdictional element in *Lopez*, the Court simply did not state or imply that all criminal statutes must have such an element, ***or that all statutes with such an element would be constitutional*,** or that any statute without such an element is *per se* unconstitutional." *United States v. Wilson*, 73 F.3d 675, 685 (7th Cir. 1995) (emphasis added).

17

The Ninth Circuit has similarly recognized that a jurisdictional hook, standing alone, does not "shield a statute from constitutional infirmities." *United States v. McCoy*, 323 F.3d 1114, 1125 (9th Cir. 2003).  The reason is simple: where "a general regulatory statute bears a substantial relation to [interstate] commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Raich*, 545 U.S. at 17 (quoting *Lopez*, 514 U.S. at 558 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 196 n.27 (1968)); *Perez v. United States*, 402 U.S. at 154 ("[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class'") (quoting *Wirtz*, 392 U.S. at 193).  But where the Government ***cannot*** establish that the general regulatory statute substantially affects interstate commerce because the class of activities it covers has such an effect at least in the aggregate, the *de minimis* nexus of any individual case will ***not*** suffice to justify federal statutory regulation of the entire class.  *See Raich*, 545 U.S. at 17 (quoting *Lopez*, 514 U.S. at 558 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 196 n.27 (1968)); *Perez*, 402 U.S. at 154.

This Court has squarely recognized this distinction.  As the Court explained in 2003:  if a federal criminal statute targets a class of activities that in the aggregate substantially affects interstate commerce, which effect is a pre-requisite to the statute's constitutionality under the Commerce Clause, then the Government

18

need only prove a *de minimis* impact on interstate commerce to satisfy the jurisdictional element in a valid statute. *See United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) (*de minimis* standard in jurisdictional element for jury in a particular case valid because the statute regulates a broad activity that, taken in the aggregate, substantially affects interstate commerce). The District Court, however, did not recognize this distinction. It instead treated the presence of the minimal nexus requirement in the statute's jurisdictional hook as sufficient to establish § 2156(a)'s validity under the Commerce Clause. In so doing, the District Court committed legal error under the foregoing circuit and Supreme Court precedents.

As discussed more fully below, this error requires reversal because the error was not harmless. Had the District Court correctly distinguished the minimal nexus required to establish jurisdiction over an individual prosecution from the substantial nexus required to establish § 2156(a)'s validity under the Commerce Clause, it would have recognized that the Government's Bill of Particulars[7] and other evidence of the charged offenses' impact on interstate commerce, though perhaps sufficient to show the kind of *de minimis* nexus required by the jurisdictional hook, was in no way sufficient to show that § 2156(a) regulates a

---

[7] The Bill of Particulars is limited to items such as chalkboards, syringes, magnifying glasses, and a computer that might have traveled in interstate commerce. (J.A. Vol. I. p. 249-53).

class of activities that, even in the aggregate, "substantially affect" interstate

commerce in the manner Supreme Court and circuit precedents require.[8]

### B. Congress' Power To Criminalize Acts Of Animal Cruelty—A Historically Local Concern—Is Limited To Those Acts Having A Substantial Effect On Interstate Commerce.

As noted, Appellants were indicted pursuant to § 2156(a) which, unlike the

ensuing subsections, does ***not*** purport to regulate the channels or instrumentalities

of interstate commerce. Rather, it regulates activities (sponsorship or exhibition of

animals in fighting ventures) that the Government contends may occur purely

intrastate for purposes that are not necessarily or even predominantly economic or

commercial. Accordingly, under settled Supreme Court precedent, the provision's

application to such conduct is valid only if there is record evidence or the

equivalent in legislative findings that the conduct "substantially affects" interstate

commerce or that its federal criminalization is otherwise "essential" to effectuate a

valid federal regulatory scheme. *See, e.g., Raich*, 545 U.S. at 12-13 & n.20, 21,

n.32, & *id.* at 24 (citing *Lopez*, 514 U.S. at 561). Absent such findings, the District

Court's judgment rejecting Appellants' Commerce Clause challenge must be

---

[8] Specifically, and as detailed below, there is no evidence or finding of fact in the statute or the 2007 amendments' legislative history establishing that the activities § 2156(a) now targets as felonies have a substantial effect on interstate commerce. *See* Transcript of Motion Hearing (J.A. Vol. I. p. 211-15) (acknowledging that the last Congressional findings related to impact on interstate commerce in this statute were in 1976); *see generally* Parts IB and IC, *infra*. And there is no evidence in the Bill of Particulars that, even under the most deferential analysis, would establish a substantial effect on interstate commerce.

reversed and the statute construed either to exclude such activity or, if it cannot be so construed, invalidated as exceeding the scope of the commerce power.

**C. The District Court's Disposition of Appellants' Commerce Clause Challenge Requires Reversal Because the Intrastate Acts of Exhibition and Sponsorship § 2156(a) Purports to Prohibit Do Not, Alone or in the Aggregate, Substantially Affect Interstate Commerce.**

The Animal Welfare Act (AWA), of which § 2156 is a part, was first enacted in 1966 with the modest aim of prohibiting pets from being stolen and sold to research laboratories in interstate commerce. (J.A. Vol. I. p. 145). The current animal fighting provision, however, was added in 2007, see Pub. L. No. 110-22, 121 Stat. 89 (May 3, 2007), chiefly in response to the concern that "animal fighting is a brutal, inhumane practice," that warranted greater federal penalties. (J.A. Vol. I. p. 150). Importantly, Congress recognized in passing the amendments creating such penalties that nearly every State already regulates animal fighting, *see, e.g*., H. R. Rep. 110-27, Pt. 1, at 2, 5 (Mar. 1, 2007), including South Carolina, in which cockfighting is a misdemeanor, *see* S.C. Code Ann. § 16-17-650. Accordingly, and as evidenced by the statute's own exceptions for States in which cockfighting is lawful, *see, e.g.,* § 2156(a)(2); (d), Congress attempted to limit to activities "in interstate or foreign commerce" the 2007 amendments making cockfighting a federal felony punishable by up to three years in prison, H.R. Rep. No. 110-27, Pt. 1, at 2.

21

It is precisely because (as Congress itself recognized) the 2007 amendments are a textbook example of a federal intrusion on state police power that § 2156(a) merits the most exacting scrutiny for compliance with the limits of Congress's Commerce Clause authority.  *See, e.g., Lopez*, 514 U.S. at 561 n.3 (because "States possess primary authority for defining and enforcing the criminal law", Congress "displaces state policy choices" when it "criminalizes conduct already denounced as criminal by the States") (quotation omitted).[9]  Applying such scrutiny reveals that § 2156(a)'s application to the type of intrastate fighting ventures at issue here does not comport with any of the ways in which a federal criminal statute may satisfy the constitutional requirement that "the regulated activity 'substantially affects' interstate commerce," or is otherwise "an essential part of a larger regulation of economic activity."  *Lopez* , 514 U.S. at 559; *see also Raich,* 545 U.S. at 16-17; *Jones*, 529 U.S. at 857-58*; Morrison,* 529 U.S. at 608.

---

[9] *See also, e.g., id.* at 585 (Thomas, J. concurring) (admonishing courts to be wary of "[a]ny interpretation of the Commerce Clause that even suggests that Congress could regulate" the quintessentially local aspects of activities, such as "marriage, littering, or **cruelty to animals**," that have forever been the province of State police power); *Raich*, 545 U.S. at 42 (O'Connor, J., dissenting) ("We enforce the 'outer limits' of Congress' Commerce Clause authority not for their own sake, but to protect historic spheres of state sovereignty from excessive federal encroachment.").

1.    **The Activity § 2156(a) Prohibits Is Not A Commodity For Which There Is an Undisputed and Comprehensively Regulated Interstate Market.**

The first circumstance in which Congress may regulate intrastate conduct under the "substantial effects" test was present in *Wickard* and, most recently, in *Raich*.  In both cases, the Supreme Court upheld prohibitions on the intrastate production of a "***fungible commodity*** for which there is an ***established*** . . . ***interstate market***" that Congress had "enacted ***comprehensive legislation*** to regulate."  *Raich*, 545 U.S. at 18, 22 (emphasis added).  The justification for federal regulation was thus no more than an application of the laws of "supply and demand."  *Id*. at 19.  As the Court explained in *Raich*, "production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that commodity."  *Id*.

Applying similar reasoning, this Court and other courts of appeals have rejected Commerce Clause challenges to statutes prohibiting possession of commodities such as ammunition and child pornography.  *See United States v. Bunn*, 133 F.3d 917 (4th Cir. 1998) (unpublished) (felon in possession of ammunition); *United States v. Buculei*, 262 F.3d 322 (4th Cir. 2001) (production of child pornography); *United States v. Forrest*, 429 F.3d 73 (4th Cir. 2005) (possession of child pornography).  As this Court explained with respect to child

23

pornography, there is an "enormous interstate market" that "Congress has chosen to directly regulate." *Buculei*, 262 F.3d at 330.[10]

    This emphasis on the relationship between the commerce power and federal regulation of commodities in an undisputed and comprehensively regulated interstate market is as critical here as it was in the foregoing cases, particularly *Raich*, which reaffirmed the limits on the commerce power that proved fatal to the statutes in *Lopez* and *Morrison*. *See Raich*, 545 U.S. at 23-26. In both *Lopez* and *Morrison* the Court, "conscious of the potential of the 'substantially affects' test to ''obliterate the distinction between what is national and what is local,'' rejected the argument that Congress may regulate intrastate activity ***based solely on the effect that it may have on interstate commerce through a remote chain of inferences***." *Raich*, 545 U.S. at 35-36 (Scalia, J., concurring) (emphasis added) (quoting *Lopez*, 514 U.S. at 566-67 (quoting *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 554 (1935)) and citing *Morrison,* 529 U.S. at 615-16).

    The foregoing precedents establish that the Commerce Clause question in this case extends well beyond the bounds of *Wickard* and *Raich*. Although

---

[10] Even in cases involving such commodities and markets the exercise of Congress's Commerce Clause authority remains the subject of significant constitutional debate. *See, e.g., United States v. Alderman*, 593 F.3d 1141 (9th Cir. 2010) (O'Scannlain, J., dissenting from denial of rehearing *en banc*) (concluding that federal prohibition on possession of body armor by a felon exceeds the commerce power); 562 U.S. __ (2011) (Thomas, J., dissenting from denial of *certiorari*).

portions of § 2156 might be viewed as regulating "commodities" of the type at issue in such precedents, *see, e.g.*, § 2156(b), the only provision at issue here—§ 2156(a)—plainly does not.  As noted, § 2156(a) regulates an ***activity***—sponsorship or exhibition of an animal in an animal fighting venture—that is ***not*** a commodity like marijuana or wheat.  *See* 7 U.S.C. § 2156(a).  Further, the record in this case does not establish:  (1) an undisputed or established interstate market in the regulated activity, *compare, e.g., Raich*, 545 U.S. at 20-21 (discussing record evidence of such a market in the case at bar as well as in *Wickard*); or (2) a comprehensive, historic, and "closed federal regulatory system," *compare, e.g., id*. at 13; *see also id*. at 10-11; *Wickard*, 317 U.S. at 118, 127-28.  Rather, the record below and the text of § 2156(a) itself establish that the activities covered by that subsection (which need not occur interstate or for commercial purposes), are ***not*** (like the commodities in *Wickard* and *Raich*) historically or comprehensively federally regulated, but are instead expressly ***excepted*** from the federal criminal prohibition if they occur in States that consider them legal.  *See, e.g.,* 7 U.S.C. § 2156(d)(a)(2) (exempting from the federal criminal prohibition cockfighting ventures that occur in States where such ventures are legal, so long as the birds involved have not traveled in interstate commerce); § 2156(d) (same with respect to use of the mails to promote cockfighting activity that is legal in the State in which it occurs).  This case thus bears no resemblance to *Wickard*, *Raich*, or other

cases in which courts have concluded that the intrastate use or possession of a commodity, alone or in the aggregate, justified comprehensive federal regulation of an undisputed interstate market for that commodity.

To be sure, the animal fighting activity § 2156(a) regulates may involve the use of commodities for which there is a national market, as any conceivable activity in the modern world does. But this Court has drawn a sharp distinction between situations where "Congress has chosen to directly regulate the interstate market" for a commodity and those where "Congress sought to regulate certain activities under the assumption that they substantially affected [in the aggregate] interstate markets for other activities." *Buculei*, 262 F.3d at 330 (explaining that it "is important in the analysis and application of *Wickard* that, in this instance, Congress is regulating ***the very thing*** (*i.e.*, child pornography) for which an interstate market exists") (emphasis added)); *see also United States v. Rodia*, 194 F.3d 465 (3d Cir. 1999) (observing that jurisdictional hook involving use of any item that has travelled in interstate commerce is "almost useless"); *McCoy*, 323 F.3d at 1126 (same). This approach not only makes sense; it is compelled by *Lopez* and *Morrison*. If the mere fact that the fighting venture in this case involved rubber bands and cotton balls that moved in interstate commerce were enough to justify federal regulation of the venture under the Commerce Clause, then the movement in interstate commerce of a gun possessed in a school zone should have

26

been enough to uphold the legislation in *Lopez*, and the movement in interstate commerce of an implement a defendant used to commit violence against a woman should have been enough to uphold the legislation in *Morrison*. The Supreme Court held otherwise because such tangential connections are not sufficient to establish that an intrastate activity "substantially affects" interstate commerce.

In the instant case, the government alleged that the charged fighting ventures involved the use of telephones, rubber bands, cotton, and other supplies that moved in interstate commerce. Just as these connections are insufficient to establish a substantial effect on interstate commerce for the reasons above, they are insufficient to establish that federal criminalization of the ventures is "essential" to effectuate an established interstate regulatory scheme. Indeed, the exceptions that § 2156 makes for ventures in States where they are considered legal, *see* § 2156(a)(2); (d); (i), show the opposite, because those exceptions would leave a gaping hole in any serious effort to regulate a *bona fide* interstate market in the prohibited activity (as distinct from any such market for the commodities used therein, which market the record does not establish in any case). Because States that freely allow cockfighting would be the greatest contributors to the purported interstate markets for "animals" and "instruments" the 2007 amendments were designed to regulate, see H.R. Rep. 110-27, Pt. I, at 2, 4, it is simply not plausible to justify § 2156(a)'s criminal prohibition, which expressly exempts various

fighting ventures in those States from federal regulation, on the grounds that the

ventures it does target are "essential" to effectuate federal regulation of the alleged

interstate "animal" and "instrument" markets. *E.g., Raich*, 545 U.S. at 24 (quoting

*Lopez*, 514 U.S. at 561); *see also id*. at 27 (emphasizing that the Controlled

Substances Act "designates marijuana as contraband for *any* purpose" and thus

does not provide any exemptions from the Act's criminal prohibition); *id*. at 37-38

(Scalia, J., concurring) (explaining why the targeted intrastate activity must be

"essential" or "necessary" to an interstate market to merit regulation); *United

States v. Wrightwood Dairy Co*., 315 U.S. 110, 119 (1942) (Congress may regulate

intrastate activities "which in a substantial way interfere with or obstruct the

exercise of" an enumerated power). For all of these reasons, the activities the

Government seeks to regulate under § 2156(a) are not akin to the type of

commodity-based regulation at issue in *Wickard* and *Raich*.

### 2. The Activity § 2156(a) Prohibits Is Also Not a "Quintessentially" Economic Activity.

Another reason the criminal prohibition in § 2156(a) goes well beyond the

scope of existing Commerce Clause cases is that the activities it regulates are not

"quintessentially economic." *E.g., Raich*, 545 U.S. at 25. The Supreme Court has

long focused on this criterion in analyzing the validity of federal criminal

prohibitions under the Commerce Clause. *See, e.g., id*. at 17 (citing *Wickard*, 317

U.S. at 128-29; *Perez*, 402 U.S. at 151). The activities § 2156(a) targets plainly do

28

not fall in this category because the statute (at least as the Government interprets it) would prohibit purely intrastate, backyard fighting ventures undertaken strictly for "entertainment" value. 7 U.S.C. § 2156(g)(1); *compare Raich*, 545 U.S. at 25 (explaining that the statute in issue regulated "quintessentially economic" activity); *Morrison*, 529 U.S. at 611, n.4 (intrastate activities susceptible to Commerce Clause regulation have long been "of an apparent commercial character").

This point is critical because it conclusively distinguishes the criminal prohibition in this case from the prohibition this Court and others have upheld under the Hobbs Act, which prohibits robbery or extortion that "in any way or degree obstructs, delays, or affects commerce." 18 U.S.C. § 1951(a). For prosecutions under the Hobbs Act, this Court has held that the jurisdictional element requires showing only a "minimal effect" on interstate commerce. *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003). That is permissible where, as in *Williams*, a court has already concluded that the statute that governs the individual prosecution is a valid exercise of the commerce power because the statute regulates a class of activities that, at least in the aggregate, "substantially affect" interstate commerce. That is the conclusion courts have reached with regard to the Hobbs Act. Although this Court and others have characterized the Hobbs Act as an attempt by Congress to exercise the "full extent" of its constitutional authority, they have ultimately concluded that the statute regulates a

class of activities that, at least in the aggregate, substantially affects interstate commerce. *Id.*; *see also United States v. McFarland*, 311 F.3d 376 (5th Cir. 2002) (Garwood, J., dissenting from affirmance of the Hobbs Act by evenly divided *en banc* court). Importantly, however, the reason for this conclusion—namely, that *all* the activities covered by the Hobbs Act are "quintessentially economic"—does not apply here because § 2156(a) by its terms extends to activities undertaken solely for non-commercial (sporting or entertainment) purposes.

This Court's opinion in *Williams* illustrates the distinction. In permitting Congress to reach robberies that have only a minimal individual effect on interstate commerce, this Court stressed that "the Hobbs Act reaches a ***quintessentially economic*** activity." *Williams*, 342 F.3d at 354 (emphasis added). Theft, after all, is commerce by force. And a "robbery depletes the assets of a business that is engaged in interstate commerce." *Id.* at 354-55. Because commerce is impossible where theft is rampant, theft is inherently economic in a way that fundamentally distinguishes it from other criminal activity. The rationale for upholding the Hobbs Act is thus in no way an invitation to federalize all violent crimes, much less crimes of violence toward animals. *See, e.g., Raich,* 545 U.S. at 50 (O'Connor, J., dissenting) ("To [allow Commerce Clause regulation] wherever private activity affects the demand for market goods is to draw no line at all, and to declare everything economic. We have already rejected the result that would

30

follow—a federal police power.") (citing *Lopez*, 514 U.S. at 561, 564).  As the

Supreme Court warned in *Morrison*, Congress cannot use the aggregation principle

to chase a "causal chain from the initial occurrence of a violent crime . . . to every

attenuated effect upon interstate commerce."  529 U.S. at 615.  The "regulation and

punishment of intrastate violence that is not directed at the instrumentalities,

channels, or goods involved in interstate commerce has always been the province

of the States."  *Id*. at 618; [11]*see also Morrison*, 529 U.S. at 613 (holding that

although gender-motivated violence might, in the aggregate, have some effect on

interstate commerce, such effects could not be aggregated where it is not inherently

"economic in nature"); *Jones v. United States*, 529 U.S. 848, 857-58 (2000)

(construing federal arson statute as inapplicable to arson of a non-commercial

private residence, where broader construction would raise constitutional question).

   Section 2156(a) is a far cry from the Hobbs Act.  Though laudable, the

provision's efforts to protect animals from cruelty and abuse and, specifically, to

---

[11] Indeed, this Court recently reached a similar conclusion in *United States v. Comstock*, finding that the Commerce Clause did not authorize the federal government to civilly commit a "sexually dangerous" person.  551 F.3d 274 (4th Cir. 2009).  Although the Supreme Court subsequently reversed, it did so on different grounds involving the narrow intersection between the Necessary and Proper Clause and "the Government's legitimate interest as a federal custodian in the responsible administration of its prison system."  *Comstock*, 560 U.S. at ___, slip. op. at 21 (explaining that its conclusion did not contravene the admonitions in *Morrison* and *New York* against imbuing the federal government with "a general police power").  Accordingly, the Supreme Court's opinion in *Comstock* does not invalidate this Court's observation that "nothing in" *Raich* "alters the core holding in *Morrison*."  551 F.3d at 280 n.6.

regulate the intrastate fighting activities the Government contends are covered, are *not* efforts to regulate inherently or "quintessentially" economic activity. Although the activities covered by subsection (a) can obviously be done for profit or using implements that move in interstate commerce—just as gender-motivated violence can be done for that reason or using such implements—such activities are not essentially economic, as § 2156(f)(1)'s references to "sport" and "entertainment" recognize. In short, although animal fighting may in certain instances be a "brutal, inhumane practice," (J.A. Vol. I. p. 150), and that is a valid reason for a State to exercise its police power to criminalize it, this aspect of the activities § 2156(a) targets does *not* establish the economic character that the Supreme Court has found critical in upholding other federal attempts to regulate interstate violent conduct.

> **3.** **The Alleged Interstate or Economic Aspects of Intrastate Fighting Ventures Cannot Be Aggregated to Justify the Prohibition in § 2156(a).**

It is of course true that the Supreme Court has in certain circumstances permitted regulation of activities that individually have a minimal effect on interstate commerce because their aggregate effect would be "substantial." *E.g., Wickard*, 317 U.S. at 118, 127-28. But this "aggregation principle" has been carefully limited in ways that preclude the Government from relying on it to justify § 2156(a)'s regulation of intrastate conduct. *See, e.g.*, *Morrison*, 529 U.S. at 608. Specifically, courts have generally reserved the aggregation doctrine for

circumstances not present here, namely, situations in which a federal criminal statute targets a commodity for which there is an established interstate market or otherwise involves inherently economic activity.  *See id*.; *Wickard*, 317 U.S. at 120.

The fact that the activities § 2156(a) targets are not commodities or otherwise inherently economic or part of an established interstate market for the prohibited conduct (as distinct from alleged markets for the animals, implements, or communications addressed in subsections (b), (c) and (e)) should alone foreclose application of the aggregation principle in this case.  But even if the Court concludes that some aspects of subsection (a) fighting ventures are sufficiently commercial to justify the principle's application, doing so would not establish the provision as a valid exercise of Congress's Commerce Clause authority.  The reason is that finding an aggregate substantial effect on interstate commerce here would require the Court to pile "inference upon inference," 514 U.S. at 567, in precisely the manner the Supreme Court rejected in *Lopez* and *Morrison*.

In *Lopez*, the Government argued that the aggregate effect of possessing firearms (which may themselves move in interstate commerce) in school zones would increase violent crime, interfere with the learning environment, and thereby inhibit commerce.  *See* 514 U.S. at 567.  The Supreme Court rejected this

33

argument, refusing to "pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* Under so loose an aggregation theory, "Congress could regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce." *Id.* at 564. The Court applied the same principle to reject the Government's argument in *Morrison* that, at least in the aggregate, gender-motivated violence (which as noted may occur using implements that move in interstate commerce) substantially affects interstate commerce. *Morrison*, 529 U.S. at 617 (accepting the premise that there may be some connection between gender-motivated violence and interstate commerce, but rejecting the argument that Congress could regulate such conduct "based solely on [its] aggregate effect on" such commerce). As the Court again explained, so permissive an approach "would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption." *Id.* at 615.

That is exactly the result the aggregation principle would yield here. To take but one example: Appellant Grooms was indicted for taking part in a cockfighting event in Lexington County, South Carolina. The Government does not allege that the birds used at this event ever traveled in interstate commerce, a fact reflected in

34

its failure to charge Grooms under § 2156(b)'s "commodity provision." Further, the Government does not allege that the event was promoted in a way that would attract or target participants from out of state.[12] Instead, the Government's Bill of Particulars strains to show an interstate nexus by itemizing the use of ancillary items that bear some interstate provenance, from mobile phones used by the defendants, to food and concession items consumed at the cockfighting event, to rubber bands, call slips, cotton balls, and drugs given to the birds. (J.A. Vol. I. pp. 440-443). It would eviscerate the Commerce Clause to hold that the aggregate intrastate use of such items (many of which are not specific to animal fighting ventures) "substantially affects" interstate commerce, because doing so would

---

[12] In fact, the Government acknowledges that when a few individuals from Florida showed up at the event, they were told to leave because they were from out of town. (J.A. Vol. I. p. 439.) The Government does of course contend that the South Carolina Gamefowl Breeders Association, a local chapter of a national organization, collects membership dues, "maintains a web-site," and "pay[s] lobbying fees and for political contributions." (J.A. Vol. I. p. 442.) But these allegations are also insufficient to establish a Commerce Clause nexus. Wholly apart from the First Amendment concerns that would attend the Court's reliance on such communications as the basis for a federal criminal prohibition divorced from the channels or instrumentalities of interstate commerce, *compare, e.g.*, § 2156(c) (expressly tying a prohibition on advertising to such channels), such expressive activities are distinct from the intrastate conduct § 2156(a) purports to regulate, and thus do not establish, alone or in the aggregate, an interstate market in, or other interstate economic justification for Commerce Clause regulation of, the kind of commodity present in precedents addressing federal regulation of drugs, agricultural commodities, or even child pornography. *See, e.g.*, *Buculei*, 262 F.3d at 330 (explaining that it "is important in the analysis and application of *Wickard* that, in this instance, Congress is regulating **the very thing** (*i.e.*, child pornography) for which an interstate market exists") (emphasis added)).

35

bring nearly every activity in the modern world within Congress' power to regulate. *See, e.g., United States v. Rodia*, 194 F.3d 465, 472 (3d Cir. 1999); *McCoy*, 323 F.3d at 1126. The fact that the fights also allegedly involved some accoutrements that move in interstate commerce and *are* specific to cockfighting, *see, e.g.*, (J.A. Vol. I. pp. 440-441) (call slips and livestock drugs), does not change this. As explained above, § 2156(a) does not target any alleged interstate market for those items. Rather, it targets the activity of sponsoring or exhibiting animals in fighting ventures. Thus, under settled precedent, § 2156(a) is not, like subsections (b) (animals), (c) (interstate instrumentalities for commercial speech), and (e) (sharp instruments), an instance in which Congress is "regulating the very thing" (rubber bands, cotton, or livestock drugs) for which the Government alleges "an interstate market." *Buculei*, 262 F.3d at 330; *Raich*, 545 U.S. at 52 (O'Connor, J., dissenting) ("[S]omething more than mere assertion is required when Congress purports to have power over local activity whose connection to an interstate market is not self-evident. Otherwise, the Necessary and Proper Clause will always be a back door for unconstitutional federal regulation."). Nor is this is a situation in which the Government claims, or plausibly could claim, that § 2156(a)'s criminal prohibition on intrastate fighting ventures is, at least in the aggregate, "essential" to effectuate a broader federal scheme. *Compare Raich*, 545 U.S. at 22 (citing "concerns about diversion [of home-grown marijuana] into illicit channels"). As

noted, the statue itself belies this claim in exempting violent fights from federal criminal prosecution if they occur in States where they are legal and involve only local animals.  *See* § 2156(a)(2); (d).

For all of these reasons, the intrastate fighting activities the Government says § 2156(a) criminalizes do not, alone or together, substantially affect interstate commerce.  Accordingly, affirming the District Court's contrary judgment would require this Court to go well beyond the bounds of any Supreme Court or circuit precedent.  The Court should decline the Government's invitation to do that, and thereby avoid "pil[ing] inference upon inference" to permit precisely the kind of federal criminalization of local activities that the Supreme Court has held would violate constitutional federalism by "obliterat[ing] the distinction between what is national and what is local." *Lopez*, 514 U.S. at 566-67 (quoting *Schechter Poultry*, 295 U.S. at 554 (1935)).

### 4. The District Court's Judgment Denying Appellants' Commerce Clause Challenge and Accepting Their Pleas Must Be Reversed.

The foregoing constitutional problems with federal criminalization of the class of conduct at issue here (namely, sponsorship or exhibition in an intrastate fighting venture of an animal that the defendant does not know was moved in interstate commerce for the purpose of participating in the venture) leaves the Court with two choices.  *First*, it can attempt to construe § 2156(a) to avoid

37

regulating such conduct and limit § 2156(a) to sponsorship or exhibition of animals in fighting ventures that are themselves interstate and commercial, or that involve animals that a charged sponsor or exhibitor knew moved in interstate commerce for purposes of participating in the venture. *See Jones*, 529 U.S. at 857-58 (endorsing a narrowing construction of the federal arson statute).

The viability of this approach depends on whether § 2156(a)'s application to the class of conduct here is ambiguous. *See, e.g.*, *Clark v. Suarez Martinez,* 543 U.S. 371 (2005) at 723-24. Although § 2156(a) does not expressly limit its application in the manner described above, its scope cannot be determined by looking at the language in isolation, *see, e.g., Brown v. Gardner*, 513 U.S. 115, 118 (1994), but must be construed in "'context and with a view to [its] place in the overall statutory scheme.'" *E.g., FDA v. Brown & Williamson*, 529 U.S. 120, 132-33 (2000) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989)). Here, that inquiry suggests that the provision may be construed to exclude the constitutionally problematic applications at issue here because: (i) § 2156(g)(1) expressly defines the activities within subsection (a)'s purview as fighting ventures "in or affecting interstate or foreign commerce"; (ii) §§ 2156(a)(2), (c), (d) and (i) require respect for State regulation of intrastate ventures; and (iii) the 2007 amendments' legislative history emphasizes Congress's "purpose" of "strengthen[ing]" the prohibitions on animal fighting violations

38

connected with "interstate commerce" without displacing contrary State regulation, *see, e.g.*, H.R. Rep. 110-27, Pt. 1, at 2. Against this backdrop, the canon of constitutional avoidance and other settled interpretive principles support the conclusion that § 2156(a) should not be construed to reach the class of intrastate conduct at issue here, which conduct South Carolina would treat as at most a misdemeanor. *See, e.g., Jones*, 529 U.S. at 859 (construing the federal arson statute narrowly to avoid "mak[ing] virtually every arson in the country a federal offense").

*Second*, if the Court concludes that § 2156(a) cannot be construed in the manner outlined above, it (or the District Court on remand) can, and indeed must, invalidate the provision. Either way, however, settled precedent compels reversal.

## II. THE DISTRICT COURT ERR AS A MATTER OF LAW IN CONSTRUING THE GOVERNING STATUTE'S SCIENTER REQUIREMENT?

Although settled Commerce Clause limits alone support reversal of the District Court's judgment, the District Court's acceptance of Appellants' conditional pleas warrants reversal for yet another reason: the pleas were induced by the court's legally erroneous interpretation of § 2156(a)'s scienter requirement. Section 2156(a) provides that "it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture." Consistent with subsection (g)(1)'s definition of such ventures, the District Court correctly held